KIM R. WILSON (3512)
JOSEPH P. BARRETT (8088)
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah  84145
Telephone:  (801) 521-9000
krw@scmlaw.com
jbarrett@scmlaw.com

*Attorneys for Plaintiff Venu Katz*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| VENU KATZ, | ) | **FIRST AMENDED COMPLAINT** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:10-cv-00077-DB |
| | ) | |
| D&M DEVELOPMENT SERVICES, LC, | ) | Judge Dee Benson |
| THE ELVA GROUP, LLC, MARTIN | ) | |
| POOL individually, MARK DALTON | ) | |
| individually, ARMAND FRANQUELIN | ) | |
| individually, JAMES SMITH individually, | ) | |
| LOREE SMITH individually, KIT | ) | |
| MORRISON individually, REAL ESTATE | | |
| INVESTOR SUPPORT, LLC, THE | | |
| COACHING COMPANY, LLC, | | |
| NATIONAL REAL ESTATE INVESTORS, | | |
| L.C., and John Does 1-5 | | |
| | | |
| Defendants | | |

Plaintiff Venu Katz, by and through counsel of record, hereby complains and alleges

against Defendants D&M Development Services, L.C., The Elva Group, LLC, Martin Pool

individually, Mark Dalton individually, Armand Franquelin individually, James Smith

Individually, Loree Smith individually, Kit Morrison individually Real Estate Investor Support, LLC, The Coaching Company, LLC, National Real Estate Investors, L.C., and John Does 1-5 as follows:

## PARTIES, JURISDICTION & VENUE

1.      Plaintiff, Venu Katz ("Mrs. Katz") is a resident of California.

2.      D&M Development Services, L.C. ("D&M") is a Utah corporation organized under the laws of the State of Utah, with its principal office and place of business located in Sandy, Utah.

3.      The Elva Group, LLC ("Elva") is a Utah corporation organized under the laws of the State of Utah, with its principal office and place of business located in South Ogden, Utah.

4.      Martin Pool ("Pool") is an individual residing in Utah.

5.      Mark Dalton ("Dalton") is an individual residing in either Utah or Arizona who does or has done business in the State of Utah.

6.      Armand Franquelin ("Franquelin") is an individual residing in Utah.

7.      Upon information and belief, James Smith ("Smith") is an individual residing in Florida who does or has done business in the State of Utah.

8.      Upon information and belief, Loree Smith is an individual residing in Florida who does or has done business in the State of Utah.

9.      Upon information and belief, Kit Morrison ("Morrison") is an individual residing in Utah.

10.     Real Estate Investor Support, LLC, is a corporate organization of unknown residency which does or has done business in the State of Utah.

11.     The Coaching Company, LLC, is a corporate organization of unknown residency which does or has done business in the State of Utah.

12.     National Real Estate Investors, L.C. is a corporate organization of unknown residency which does or has done business in the State of Utah.

13.     John Does 1-5 are potential Defendants in this matter.

14.     Diversity jurisdiction under 28 U.S.C.A. §1332(a) is proper because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

15.     This Court has subject matter jurisdiction by authority of §12 and §22 of the Securities Act of 1933 15 U.S.C. §77, §78aa of the Private Securities Litigation Reform Act of 1995 15 U.S.C. §78b, the Utah Uniform Securities Act, and Utah Code Annotated § 61-1-1.

16.     Venue is proper in the Court under 28 U.S.C. §1391(a)(2) because Defendants maintain a principal place of business within the Central Division; and a substantial part of the events giving rise to the claims herein occurred in the State of Utah.

## GENERAL ALLEGATIONS

17.     Mrs. Katz, is a 67 year old widow who lost her husband in March 2002.

18.     This case arises from Defendants' fraudulent manipulation of Mrs. Katz concerning a real estate development project called "Market Street Place" ("Market Street") in Hurricane City, Washington County, Utah.

19.     Market Street consists of the following:  parcels – 282, 268, 240,258 West State Street and 19 N. 200 W. Hurricane, Utah 84737 ("State Street Property").

20.     In September 2004, Mrs. Katz met James Smith ("Smith") following his presentation at a one-day Real Estate seminar at the Staples Center in Los Angeles, California.

Smith provided his phone number and encouraged Mrs. Katz to call him so that he could help her invest in real estate. Mrs. Katz signed up for an additional Real Estate lecture program at a cost of approximately $3,000 as well as a coaching and a mentoring program that has not been fulfilled for an additional fee.

21.     In October 2004, Ms Katz attended another Real Estate Seminar for three days in Anaheim, California which she understood would be presented by Smith, but he did not attend.

22.     From December 13-17[th] 2005 Mrs. Katz attended another Real Estate Seminar for five days entitled M-5 (standing for $5 million net worth) in Tempe, Arizona along with her god-daughter Daya Fisch ("Ms. Fisch"). At the M-5 session, James Smith, and other instructors, including many former students of Smith including Martin Pool, taught various subjects regarding real estate investing.

23.     Mrs. Katz has paid at least $25,000 in fees for Real Estate Seminars and coaching and mentoring programs.

24.     At the M-5 Seminar, Mrs. Katz had lunch with Smith and Ms. Fisch wherein Mrs. Katz informed Smith that her husband had passed away and that she had a net worth in excess of $5 million.

25.     Smith offered to assist Mrs. Katz in real estate transactions wherein he would maintain a 50% ownership interest and Smith requested that Plaintiff contact him for further details.

26.     At the M-5 Seminar, Mrs. Katz met Defendant Pool, a former student of Smith who promoted that he earned significant cash in hard money lending.

27.     In January 2005, Smith called Mrs. Katz and after several minutes added Pool to the call. Together, Smith and Pool requested that Mrs. Katz invest in the Market Street real estate development project in Hurricane, Utah. Smith told Mrs. Katz, "that this investment was safe enough that he would recommend it for his mother."

28.     By developing and fostering a close, personal and familial relationship with Mrs. Katz, Smith and Defendants fraudulently induced Mrs. Katz to loan $1.3 million to the Market Street project.

29.     Specifically, Smith informed Mrs. Katz that she would become a partner with Smith, Pool and D&M - managed by Defendants Dalton and Morrison.

30.     Mrs. Katz was asked to loan $1.3 million for a period of eight (8) months to the Market Street project at 27% simple interest and Mrs. Katz was granted a 25% ownership interest in the joint venture.

31.     As a condition of Mrs. Katz' loan, D&M and Pool were required to provide a first Deed of Trust on all property purchased using loan proceeds and were required to obtain a lender's policy of title insurance in favor of Mrs. Katz.

32.     In addition, D&M and Pool further agreed to pay Mrs. Katz $250,000 within eight (8) months from the date of the Joint Venture Agreement, "for her full and complete interest in the Joint Venture."

33.     Defendants Pool and Smith did not invest any money into the joint venture. Rather, they shared along with D&M a 75% interest in the joint venture for collecting Mrs. Katz' hard money loan.

34.     On January 30, 2005, D&M assured Mrs. Katz that: "Your monies will be secured with a trust deed in first position. Current Loan-to-Value is approximately 56.5% and the future value is approximately $2,900,000 to $3,400,000 when completed. The length of the note will be 8 months." (See D&M Correspondence dated January 30, 2005, attached hereto as Exhibit "A").

35.     On February 3, 2006, Mrs. Katz entered into a Joint Venture Agreement with D&M and Pool wherein Mrs. Katz was induced to loan $1.3 million in funds necessary for the acquisition of the State Street Property on certain specific conditions.  (See Joint Venture Agreement attached hereto as Exhibit "B").

36.     After Mrs. Katz made her loan, Smith specifically discussed Mrs. Katz' goal of earning $500,000 annually in a conversation with both Mrs. Katz and Defendant Pool.

37.     On February 3, 2006, Mrs. Katz executed an appropriate Trust Deed with Assignment of Rents with D&M and Pool securing first position.  (See Trust Deed attached hereto as Exhibit "C").

38.     Upon information and belief and contrary to Defendants' promises and despite Mrs. Katz' explicit escrow instructions, the Trust Deed executed by Mrs. Katz on February 3, 2006 was never recorded.

39.     Despite Defendants' assurances to the contrary and after having loaned $1.3 million, Mrs. Katz did not receive any money within eight (8) months.

40.     After loaning $1.3 million, Defendants provided Mrs. Katz false promises and warranties in order to divert her repayment funds to pay off others including contractors and subsequent investors.

41.     Defendants promised that Mrs. Katz' loan would be guaranteed by Defendants' personal assets.

42.     Despite these inducements, Mrs. Katz has not received her loan principle or interest as promised.

43.     In May 2006, Pool and Morrison approached Mrs. Katz seeking more money based on purported problems with Hurricane City and on-going budget concerns. Specifically, Defendants intentionally misrepresented that Mrs. Katz would "lose everything" if she did not agree to subordinate her loan position.

44.     Although Mrs. Katz initially refused, she eventually agreed to accept an alleged "co-first position" with another investor based upon numerous false, misleading, and fraudulent conduct by the Defendants' including but not limited to:

(a)     Failing to record the Trust Deed executed by Mrs. Katz on February 3, 2006;

(b)     failing to warn or inform Plaintiff that by accepting the re-negotiated terms of the original contract, she would risk losing the entire loan of $1.3 million dollars;

(c)     advising Plaintiff that her loan would be guaranteed if any problems arose;

(d)     providing unsupported promises or warranties that Plaintiff's loan would be guaranteed personally by assets;

(e)     failing to advise Plaintiff that her loan would not be reimbursed should the new first position lender foreclose on the subject property;

(f)     failing to provide written documentation to Plaintiff supporting the above-mentioned guarantees.

45.     On September 13, 2006, Trust Deed Entry No. 2006004223 was recorded identifying Mary Fabre LeVine ("Mrs. Levine") (a friend of James Smith and wife of Rob

LeVine, an instructor for Mr. Smith) as a co-first lien holder with Mrs. Katz in the amount of $535,500. (See Trust Deed attached hereto as Exhibit "D".)

46. Upon information and belief, Mrs. LeVine was paid in full including interest in November, 2006.

47. In late January or early February, 2007, Pool and Morrison continued to tell Mrs. Katz that they needed to obtain more money and Mrs. Katz needed to go into second position. When Mrs. Katz refused and explained that she was using the only money her late husband left for her, Mrs. Katz was continually and repeatedly told that she would lose all of her money if she did not accept second position. Specifically, Defendants' threatened that Mrs. Katz would "lose everything" if she did not agree to subordinate her loan position.

48. Reluctantly, Mrs. Katz accepted second position based upon the following promises which were to be reduced to writing by Defendants:

  (a) Defendants would pay off the loan in first position if there "were ever a problem;"

  (b) Defendants agreed to personally guarantee Plaintiff's principal investment and interest payments secured by assets;

  (c) Smith promised to personally guarantee Plaintiff's loan if she agreed to a deed in second position;

  (d) Smith convinced Plaintiff not to file a lawsuit by making repeated promises that Defendant Pool would pay Plaintiff from proceeds arising from other investments in which Defendants were involved.

49. In order to preserve her investment and based on Defendant's repeated promises, Mrs. Katz executed a Subordination Agreement which was recorded on February 7, 2007 placing TRP Investments LLC's ("TRP") loan of $750,000 in first position over Mrs. Katz. (See Subordination Agreement attached hereto as Exhibit "E".)

50. Upon information and belief, and unknown to Mrs. Katz, TRP was paid in full including interest.

51. In Summer 2007, Defendants requested that Mrs. Katz sign additional paperwork.

52. Defendants mislead Mrs. Katz into believing that they were simply seeking an additional signature for the earlier Subordination Agreement in favor of TRP Investments (Exhibit "F"). Defendants failed to inform Mrs. Katz that they were seeking funds from Northstar Funding Group, Inc. ("Northstar") as an additional investor.

53. Similarly, Mrs. Katz actions were based upon Defendants' earlier promises which were to be reduced to writing:

    (a)    Defendants would pay off the loan in first position if there "were ever a problem;"

    (b)    Defendants agreed to personally guarantee Plaintiff's principal investment and interest payments secured by assets;

    (c)    Smith promised to personally guarantee Plaintiff's loan if she agreed to a deed in second position;

    (d)    Smith convinced Plaintiff not to file a lawsuit by making repeated promises that Defendant Pool would pay Plaintiff from proceeds arising from other investments in which Defendants were involved.

54. On June 8, 2007, Mrs. Katz and Defendants executed a Promissory Note wherein D&M, The Elva Group and Mrs. Katz borrowed $975,000 from Northstar.

55. On or about June 21, 2007, based upon Defendants' misleading statements and fraudulent conduct, this Note was secured by a Subordination Agreement placing Mrs. Katz' Trust Deed from September 13, 2006 into second position in favor of Northstar's loan of $975,000. (See Subordination Agreement attached hereto as Exhibit "F".)

56.     On or about May 8, 2008, Mrs. Katz, (referred to as Au Magnet Enterprises, LP) received a Notice of Default and Election to Sell regarding the $975,000 loan from Northstar. As stated, Mrs. Katz was previously unaware of Northstar's particular involvement in this transaction.  (See Notice of Default and Election to Sell attached hereto as Exhibit "G".)

57.     On or about May 14, 2008, a Substitution of Trustee was executed appointing Meridian Title in place of Roy B. Moore as Trustee for the benefit of Northstar.  This was the first time Mrs. Katz was aware of Meridian Title's involvement in this transaction.

58.     On or about July, 2008, Mrs. Katz filed a Request for Partial Reconveyance and Deed of Reconveyance. (See Request for Partial Reconveyance and Deed of Reconveyance attached hereto as Exhibit "H".)

59.     On or about July 30, 2008, Mrs. Katz unsuccessfully sought $50,000 as payoff for a portion of the State Street Property housing a Chinese Restaurant.

60.     On or about July 31, 2008, Mrs. Katz sent a letter to Mike Moss, Title Insurance Agency, confirming that Dalton had personally guaranteed Mrs. Katz loan.  Specifically, Mrs. Katz stated that "Mark [Dalton] has repeatedly told [Mrs. Katz] he will make her whole and pay her $1.3 million no matter what happens."

61.     On or about August 15, 2008, Mrs. Katz received a Notice of Trustee's Sale for the Market Street Project including parcels – 282, 268, 240,258 West State Street and 19 N. 200 W. Hurricane, Utah 84737.  (See Notice of Trustees Sale attached hereto as Exhibit "I".)

62.     On February 19, 2009, a Trustee's Deed was recorded which divested Mrs. Katz interest in the Market Street project (See Trustees Deed attached hereto as Exhibit "J").

63. Specifically, Mrs. Katz lost her security interest in the Market Street project through the intentionally fraudulent misrepresentations, omissions and inducements by Defendants including but not limited to:

(a) Failing to record the Trust Deed executed by Mrs. Katz on February 3, 2006;

(b) failing to warn or inform Plaintiff that by accepting the re-negotiated terms of the original contract, she would risk losing the entire loan of $1.3 million dollars;

(c) advising Plaintiff that her loan would be guaranteed if any problems arose;

(d) providing unsupported promises or warranties that Plaintiff's loan would be guaranteed personally by assets;

(e) failing to advise Plaintiff that her loan would not be reimbursed should the new first position lender foreclose on the subject property;

(f) failing to provide written documentation to Plaintiff supporting the above-mentioned guarantees.

64. To date, Mrs. Katz has not received her promised payments from Defendants including but not limited to $1.3 million in loan principal, interest payments at 27% and $250,000 as promised within eight (8) months.

### FIRST CAUSE OF ACTION
**Securities Fraud – Federal §10(b) of the Exchange Act 15-USC §78j(b) &
Rule 10b-5 Thereunder, 17 C.F.R. §240.10b-5 and Utah Code Ann. §61-1-1.**

65. Plaintiff hereby incorporates by reference paragraphs 1 through 64 as if fully set forth herein.

66. Defendants directly or indirectly, in connection with the purchase and sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails and other instrumentalities of interstate commerce, with

scienter; (1) employed devices, schemes or artifices to defraud; (2) made untrue statements of material fact or omitted to state material fact necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or (3) engaged in acts, practices, or course of business that operated or would operate as a fraud and deceit upon other persons.

67.    The purpose and effect of this scheme, plan, and unlawful course of conduct was, among other things, to induce Plaintiff to loan $1.3 million and subsequently maintain her investment with Defendants while such scheme was perpetrated.

68.    As a result of Defendants' knowing and/or reckless disclosure of materially misleading facts and statements and Defendants' intentional and/or reckless omission of material facts regarding Plaintiff's loan, the information disseminated to Plaintiff was materially false and misleading as set forth above.  Plaintiff reasonably and actually relied upon the above-described false and misleading statements by maintaining her investment with Defendants.  In ignorance of the false and misleading nature of the statements and omission described above and the deceptive and manipulative devices and contrivances employed by Defendants, Plaintiff, to her detriment, relied on Defendants' representations. Had Plaintiff been furnished accurate and truthful information, Plaintiff would not have loaned $1.3 million and would not continue to maintain said investment with Defendants.

69.    By reason of the foregoing, Defendants directly or indirectly violated §10(b) of the Exchange Act 15 U.S.C. §78j(b) and Rule 10b-5 thereunder 17 C.F.R. 240.10b-5 and Utah Code Annotated §61-1-1.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

70.     Plaintiff hereby incorporates by reference paragraphs 1 through 69 as if fully set forth herein.

71.     The agreements between Plaintiff and Defendants are valid, binding and enforceable contracts.

72.     Defendants have breached the agreements as set forth herein.

73.     As a direct and proximate result of Defendants' breaches, Plaintiff has suffered damages in an amount to be proven at trial as well as specific performance.

74.     Plaintiff has been damaged by Defendants' breaches and Defendants are liable to Plaintiff for damages in an amount to be determined at trial, together with pre- and post-judgment interest, and costs incurred in bringing this action.

## THIRD CAUSE OF ACTION
### (Fraud)

75.     Plaintiff hereby incorporates by reference paragraphs 1 through 74 as if fully set forth herein.

76.     Defendant's made representations to Mrs. Katz including but not limited to promises that Mrs. Katz would be paid back and that her monies would be secured, upon which Mrs. Katz reasonably and justifiably relied to her detriment.

77.     Defendants' representations were material to Mrs. Katz' decision to loan Defendants $1.3 million dollars and sign certain documents.

78.     Defendants' representations to Mrs. Katz regarding those documents were false and misleading.

79.     Defendants made representations with reckless disregard for their truth or falsity.

80.     Defendants made representations to Mrs. Katz with the intent that Mrs. Katz would rely on the information.

81.     Defendants' actions were willful, malicious or intentionally fraudulent, or conduct that manifests a knowing and reckless indifference toward and a disregard of the rights of Mrs. Katz.

82.     As a result of Defendants' conduct, Mrs. Katz has suffered damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**(Breach of Express Warranty)**

83.     Plaintiff hereby incorporates by reference paragraphs 1 through 82 as if fully set forth herein.

84.     Defendants have failed to pay Plaintiff for interest and/or reimbursement of her $1.3 million dollar loan as stated above.

85.     Defendants failed to buy out Plaintiff's first position as problems arose with the Market Street Place Project.

86.     Defendants have failed to personally guarantee Plaintiff's loan.

87.     By failing to fulfill their obligations and/or agreements as stated above, Defendants have breached their express warranty.

88.     Plaintiff has been damaged by Defendants' breach of express warranty and Defendants are liable to Plaintiff for damages in an amount to be determined at trial, together with pre- and post- judgment interest, and costs incurred in bringing this action.

## FIFTH CAUSE OF ACTION
### (Breach of Implied Duty of Good Faith and Fair Dealing)

89.     Plaintiff hereby incorporates by reference paragraphs 1 through 88 as if fully set forth herein.

90.     The agreements between Plaintiff and Defendants contained the covenant of good faith and fair dealing.

91.     Defendants' actions as set forth herein constitute a breach of good faith and fair dealing.

92.     As a direct and proximate result of these breaches. Plaintiff has been damaged because she has not received the benefit of these agreements.

93.     Defendants are therefore liable to Plaintiff in an amount to be determined at trial, together with pre- and post-judgment interest, and costs incurred in bringing this action.

## SIXTH CAUSE OF ACTION
### (Intentional Misrepresentation/Fraudulent Nondisclosure)

94.     Plaintiff hereby incorporates by reference paragraphs 1 through 93 as if fully set forth herein.

95.     Defendants had a duty to disclose truthful and complete information to Plaintiff.

96.     Defendants knew or should have known that Plaintiff's loan would not be guaranteed by her agreeing to a second position.

97.     Defendants knew that the guarantees as stated above (i.e. failing to buy out the first position as problems arose, failing to personally guarantee Plaintiff's loan) were not true and that said guarantees would not be performed.

98.     Defendants knew or should have known that by Plaintiff taking second position, her loan would not be guaranteed should the first position lender foreclose on the subject property.

99.     Defendants made misrepresentations and intentionally failed to disclose the risks involved if Plaintiff should accept second position.

100.    Defendants made misrepresentations and intentionally failed to disclose that Plaintiff's loan would not be guaranteed by anything else but Defendants' empty promises.

101.    Defendants' omissions and misrepresentations were false and/or made recklessly for the purpose of inducing Plaintiff to accept Defendants proposals.

102.    Plaintiff actually and justifiably relied on the omissions and misrepresentations of made by Defendants in their agreements.

103.    As a result of Defendants' misrepresentations and omissions, Plaintiff has been damaged in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

104.    Plaintiff hereby incorporates by reference paragraphs 1 through 103 as if fully set forth herein.

105.    Defendants owed Plaintiff fiduciary duties including a duty to act in good faith, act diligently and prudently in managing Plaintiff's monies and to refrain from actions adverse to Mrs. Katz.

106.    Defendants breached their fiduciary duties to Plaintiff as set forth herein including, but not limited to, waiving or ignoring terms or conditions by contract with Plaintiff,

failing to disclose the risks involving Plaintiff's loan, and re-negotiating the terms of the contract with Plaintiff multiple times.

107. Plaintiff has been damaged by Defendants' breaches, and Defendants are therefore liable to Plaintiff in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Negligence)

108. Plaintiff hereby incorporates by reference paragraphs 1 through 107 as if fully set forth herein.

109. Defendants had a duty to inform Plaintiff of all information within their knowledge which would be material to Plaintiff's decision to agree to the initial terms of the contract, as well as any subsequent re-negotiations of said contract.

110. Defendants were negligent and/or reckless in:

   (a) Failing to record the Trust Deed executed by Mrs. Katz on February 3, 2006.

   (b) failing to warn or inform Plaintiff that by accepting the re-negotiated terms of the original contract, she would risk losing the entire loan of $1.3 million dollars;

   (b) advising Plaintiff that her loan would be guaranteed if any problems arose;

   (c) providing unsupported promises or warranties that Plaintiff's loan would be guaranteed personally by assets;

   (d) failing to advise Plaintiff that her loan would not be reimbursed should the new first position lender foreclose on the subject property;

   (e) failing to provide written documentation to Plaintiff supporting the above-mentioned guarantees.

## NINTH CAUSE OF ACTION
### (Liability of General Partners)

111.    Plaintiff hereby incorporates by reference paragraphs 1-110 as if fully set forth herein.

112.    This matter is subject to Utah Code Annotated §48-1-3.1 and Defendants are each jointly and severally liable to Mrs. Katz for damages in an amount to be determined at trial pursuant to Utah Code Annotated §48-1-1 et seq.

113.    Specifically, pursuant to Utah Code Annotated §48-1-12, a partner in a limited liability partnership is liable for his own negligence, wrongful acts, or misconduct.

## TENTH CAUSE OF ACTION
### (Civil Conspiracy)

114.    Plaintiff hereby incorporates by reference paragraphs 1 through 113 as if fully set forth herein.

115.    Defendants, and each of them, combined together to defraud Plaintiff by making intentional misrepresentations and fraudulently failing to disclose information material to Plaintiff related to the original agreement and subsequent re-negotiated agreements entered into with Plaintiff.

116.    As a result of the conspiracy, Plaintiff has suffered damages, and is therefore entitled to recover damages in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

117.    Plaintiff hereby incorporates by reference paragraphs 1 through 116 as if fully set forth herein.

118.    Plaintiff conferred a benefit upon Defendants.

119.    Defendants were and will continue to be unjustly enriched to Plaintiffs detriment unless restrained by this Court.

120.    Plaintiff has no remedy at law.

121.    It would inequitable and unjust for Defendants to retain said benefit without compensation to Plaintiff.

122.    By reason of the above described unjust enrichment, Defendants have been unjustly enriched and are liable to Plaintiff in an amount to be proven at trial.

### TWELFTH CAUSE OF ACTION
**(Respondeat Superior)**

123    Plaintiff hereby incorporates by reference paragraphs 1 through 122 as fully set forth herein.

124.    Defendants D&M Development Services, LC, the Elva Group, LLC, Real Estate Investor Support, LLC, The Coaching Company, LLC and National Real Estate Investors, L.C, are liable to Plaintiff for damages sustained under the theory of Respondeat Superior in that they, as employers are responsible for the negligence of their agents and employees and in particular the negligence of employees Martin Pool, Mark Dalton, Armand Franquelin, James Smith, Loree Smith, and Kit Morrison, as described herein.

125.    At the times alleged, there existed an employee and employer relationship between Martin Pool, Mark Dalton, Armand Franquelin, James Smith, Loree Smith, Kit Morrison, and Defendants D&M Development Services, LC, the Elva Group, LLC, Real Estate Investor Support, LLC, The Coaching Company, LLC. and National Real Estate Investors, L.C.

126.    At the times alleged, Defendants Martin Pool, Mark Dalton, Armand Franquelin, James Smith, Loree Smith, and Kit Morrison were acting within the scope of their authority and

employment with Defendants D&M Development Services, LC, the Elva Group, LLC, Real

Estate Investor Support, LLC, The Coaching Company, LLC and National Real Estate Investors,

L.C.

**WHEREFORE**, Venu Katz, prays for judgment against Defendants as follows:

A.      Past and future damages including, but not limited to, her entire investment of $1.3 million plus interest;

B.      Pre and post judgment interest and costs incurred in bringing this action;

C.      General damages;

D.      Punitive damages in an amount to be proven at trial; and

E.      For such other and further relief as the Court may deem appropriate.

**<u>JURY DEMAND</u>**
**(Demand for Jury Trial)**

Plaintiff hereby demands a trial by jury in this matter.

DATED this 9th day of June, 2011.

SNOW, CHRISTENSEN & MARTINEAU


By     /s/ Joseph P. Barrett
    Joseph P. Barrett
    Kim R. Wilson
    Attorneys for Plaintiff

<u>Plaintiff's Address:</u>
1558 Sunset Plaza Drive
Los Angeles, CA  90069

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 9th day of June, 2011, I electronically filed the

foregoing **FIRST AMENDED COMPLAINT** with the Clerk of the Court using the

CM/ECF system which sent notification of such filing to the following:

David B. Stevenson
STEVENSON & SMITH, P.C.
3986 Washington Boulevard
Ogden, UT  84401
*Attorney for ELVA Group, Martin Pool and Armand Franquelin*

Mark Dalton (via U.S. Mail)
7605 South Mary Ester Circle
Sandy, Utah 84093

Kit Morrison (via U.S. Mail)
9464 South Meckailee Court
Sandy, UT  84070

      /s/ Joseph P. Barrett